Case No. 21-2968, Carl Hubbard v. Randee Rewerts, oral argument not to exceed 15 minutes per side. Mr. Kazam for the appellant. Good morning and may it please the court. I'm Alexander Kazam for Petitioner Appellant Carl Hubbard. I've reserved three minutes for rebuttal. Great. The Supreme Court and this court have long recognized an equitable exception to the statute of limitations for habeas petitioners who make a credible showing of actual innocence. Mr. Hubbard has made such a showing for a combination of three key reasons. First, the evidence at trial was exceptionally weak. There was no eyewitness or forensic evidence and the state's case rested primarily on the testimony of a single witness who claimed he could identify Mr. Hubbard from the back of his head 400 feet away on a dark night. Second, that witness has now unequivocally recanted in a sworn affidavit that is corroborated by a host of other new evidence including affidavits from local business owners with no reason to lie. Third, new evidence including detailed eyewitness account points to a different suspect with a far more plausible motive. Any one of these circumstances would set Mr. Hubbard's case apart from the vast majority of other cases. Taking them all together, they clearly satisfy the standard for a gateway innocence claim. Any reasonable juror would at least have reasonable doubt about Mr. Hubbard's guilt. Well, we don't have the kind of evidence that Schlupp talked about, do we? Like forensic evidence, scientific evidence. I understand that House or one of the other cases said we're not limited to that. Obviously, you're not limited to that. But that's the kind of evidence that it looks like we're looking for. We don't really have that, do we? Your Honor, as you point out, in House and in Souter, this Court also reaffirmed that that is an illustrative list. It's not exhaustive. And while it's true that Mr. Hubbard's claim of innocence is not founded on DNA or other similar evidence, neither was his conviction in the first place. And I think that's an important point. The Seventh Circuit makes in Arnold v. Dittman that it's important to make a comparison between the incriminating evidence at trial and the exculpatory evidence here. And I think what's unusual about this case is that the evidence at trial is so weak. And that's for a couple of reasons. I think, as we say in our briefs, the testimony from Collins is simply implausible on its face. There's no corroboration that Collins was anywhere near the scene, in fact. In fact, the testimony at trial was that he was elsewhere. The State tries to rely on motive. That was what they emphasized at trial as what they called the most important circumstance for the trial judge to be aware of. But the theory of motive is implausible as well. The idea that Mr. Hubbard would wait four years and then kill someone who had declined to testify against him four years earlier just does not make sense. I suppose Mr. Collins was the key prosecution witness, at least in terms of placing Mr. Hubbard at the scene. But the trial judge, I think, referred to Mr. Collins' testimony as conflicting and downright lying, I think he said, at times. And yet, based upon other circumstantial evidence, the judge convicted him. So what are we to make now of your arguments vis-à-vis Collins' affidavit? I mean, given that the judge apparently didn't put a great deal of stock into some of his testimony. Your Honor, I think it's true that the judge acknowledged that Collins' testimony was conflicting. I think that's part of what makes it weak to begin with and why this recantation is helpful. But I do think the judge relied on it significantly. If you look at the summary of the testimony that the judge made at the end before his ruling, it did figure prominently there. And the State continued to emphasize that testimony in its closing argument. I think that's for good reason. But what's new now, then? I mean, there's a recantation, but there was a recantation. He recanted at trial. So we're back to recanting again. But I thought the fact finder had in front of him the original statement. The statement to the police, by the way, the original statement where it didn't look like there was no pressure on him. They just asked him a few questions. He answered. He said it was Hubbard. So we have that. And then we have the sworn testimony at the preliminary hearing. Then we've got the trial recantation. Then we have the unrecantation. So the fact finder, and now we've got another recantation. But I guess everything that was needed to be there was there when the fact finder evaluated it. So I don't know what's changed in terms of Collins himself. Your Honor, certainly there's other evidence in addition to Collins, but even taking Collins' recantation on its own, it's certainly the first time that the recantation of the day three testimony that the court relied on has come forward. And there's additional corroborating evidence that was not before the trial judge at the time, including the affidavits from the local business owners, affidavits from other friends and associates of Collins who say that he was crying in his cell at the time that he switched back to his day three testimony. Yeah, I mean, all of that evidence is, I mean, we've called into question, I think, the reliability of, you know, affidavits, things that are 20 years later. You know, in Cleveland it was somebody that came forward to the FBI unprompted. I'm not sure we've got that kind of indicia of reliability here. Yeah, we've got Hill or the guy that's saying that this guy Goings did it. But again, 20 years later, I mean, it just doesn't look like the kind of stuff that we've said is reliable evidence. I mean, I know you've got maybe more of it than you might in the typical case, but I don't know, when I look at, say, Cleveland, I think is probably your best case, it just looks a little bit different. There was some more objective evidence, the flight stuff, all of that. I mean, I don't know that you've got that here. Well, Your Honor, I think it's important, again, to weigh the new evidence against what was already in evidence at trial. And I think, for example, in Cleveland, the recanning witness, I think if you look at that original testimony, there was more corroboration for it in the first place. There was physical evidence, there was a bloody jacket, there was a leafy substance found under the victim's clothes. These were the kinds of facts that really gave that original testimony more weight. And that's missing from this testimony. In fact, Colin's original testimony is not plausible on its face and had very little corroboration to begin with. And as for the passage of time, it's true that some of these affidavits are delayed, but the court has said it's only an unexplained delay or an unjustifiable delay that may weigh against reliability. It's not necessarily a reason to discount it altogether. So, you know, in the Cleveland case, a key affidavit was the Donovan affidavit. That had been delayed 16 years. The court said that's not a reason in itself to discount the testimony. But it's, I mean, the Supreme Court has said it's a factor, right? The diligence is a factor in assessing the reliability. So, yeah, okay, it's not, I'm not saying, okay, I'm not looking at the store owners or I'm not looking at Hill affidavit. But the fact that it's hearsay, the fact that it's 20 years later, you know, it certainly weighs in there, I guess, is what I would say. You're correct in McQuiggin, the court said diligence could, or the timing of the submission could go to credibility. But I think it's clear from that opinion that it's not intended to be a dispositive factor. It's just something that goes into the mix. And here I think the mix in favor of Mr. Hubbard's innocence, at least a credible showing of innocence, is pretty strong. Is there any corroborating evidence on goings? I mean, I know there's this question about his brother. Did he have a brother? Is it in the record that he had a brother that was killed, that this guy even exists? I mean, I'm curious whether there's any corroborating evidence on that. Your Honor, there is the eyewitness affidavit of Hill, of course, naming goings. And then there are also two affidavits from people who say that they heard that goings had committed this crime. Right, but that theory hinges on his brother getting killed by Penn or something, right? Yes, that's right, yes. Did he have a brother? Do we have any – you could find evidence of whether – or does this person exist? I'm curious whether – I mean, it's okay, fine, I've got this other guy that he did it. But does this guy exist? Where is he? What's the – is there any corroboration on that? Well, Your Honor, I think the fact that three separate witnesses testified to this in their affidavits, and one of them did name the brother, I think Darrell was the name that was given. I think to the extent that Your Honor had concerns about the reliability of that testimony, I think the traditional way to test that would be an evidentiary hearing. And so that's our argument in the alternative, if that's Your Honor's concern. I'd like to address a couple of the states. If Your Honors have no further questions on the issues we've discussed so far, I'd like to address a couple of the states' arguments that I think are misguided here. I think one of their main arguments is that the court can't consider impeaching evidence on an actual innocence claim. I think that's entirely incorrect and contrary to both Supreme Court and this Court's precedent. This Court has made clear, for example, in Souter, that certainly recanting evidence is the type of evidence that may call into question the credibility of witnesses at trial. So certainly impeaching evidence is part of the mix that can be considered. Another argument the state makes is that the evidence is... But what do you think about, what about, is there a difference between the person recanting, so Avery in Cleveland, or external impeachment evidence? I know Collins wasn't there, or, you know, that seems a little farther afield than the person himself recanting. But maybe that's just a question of degree, I don't know. Your Honor, I'm not sure I follow the distinction you were drawing. Well, I mean, if the person who testified says, I lied, I'm recanting, as opposed to, I get affidavits from other people saying, that person at trial was not credible because I know he wasn't there. In other words, these people are impeaching me, as opposed to me saying I'm impeaching myself, essentially. Is there a difference? I mean, I don't know that I've seen the, you know, the store owners, for example, is kind of impeachment evidence of Collins, right? But it doesn't really go to whether Hubbard committed the crime. So it's impeachment evidence, it seems to me. And I don't know that we have a lot of cases that say, that kind of evidence is powerful evidence for actual innocence, because it's not the person themselves recanting. So I don't know, are there cases that suggest that the store owner type evidence is actually powerful evidence in a case like this? Your Honor, I think it follows naturally from the idea that if a recanting evidence witness is, recantation is impeaching, then other evidence showing that a person wasn't there would be impeaching too. And I think Cleveland actually is an example of that as well. In addition to the recantation of one of the key witnesses, you had evidence from, you had essentially alibi evidence, which could impeach that original witness's testimony. So the Donovan affidavit is essentially impeaching evidence for the original testimony of Avery, who said he saw this person in Cleveland, or was it Cincinnati, rather than New York. Okay. Judge Batchelder, do you have any questions? Well, yeah, I guess my question is, I don't have a problem with what the plaintiff is arguing about impeachment evidence. My concern is that I think the Supreme Court has also said that you have to have factual innocence here, not merely legal insufficiency on the part of the government, the state's case. And I'm just trying to figure out what is the evidence, the actual evidence, that Hoover didn't commit this crime. There's some hearsay stuff that has come in through affidavit, but what's the best evidence that you are pointing us to that is new evidence that hadn't been available before, that he did not commit this crime? Your Honor, I would like to answer that question. I see that I think my time has expired. Go ahead. No, go ahead. Answer. Thank you. Your Honor, that's an important question. I think the answer is that in-house, the Supreme Court said you consider all of the evidence old and new, and so certainly the sufficiency of the evidence at trial, if you look at the actual innocence cases that the Supreme Court has decided, this Court has decided, they're always comparing one against the other. And it's true that we couldn't come in here and rely solely on the evidence at trial. That would just be a sufficiency claim. The courts have made clear that you must come forward with some new reliable evidence. But once you clear that threshold, then you consider all of the evidence old and new. I think that's clear from house and other cases applying that standard. You set the standard all right, but you haven't answered my question. My apologies, Your Honor. What is the best evidence of actual innocence that you are asking us to consider in order to get him through this gateway? Well, Your Honor, I really do think the evidence works together. And as the Supreme Court said in-house, it's a holistic inquiry. So the eyewitness affidavit from Hill, which is corroborated by two other witnesses, then there's the recantation of Collins, which is backed up by the store owner's affidavits, by the subpoena evidence, by a polygraph report showing that he's telling the truth, and as well as also by reports that, you know, documented reports that around this time there was misconduct by the Troy police. So that wouldn't be the first time that something like what Collins is talking about has happened. Are you saying that undermining the state's already weak case is essentially the case for actual innocence? You're saying the state had a weak case. I've got new evidence that undermines their weak case. When I look at it all together, that's the case for actual innocence? Your Honor, I think that it could not be exclusively just looking at the state's evidence and saying that's too weak. Well, right, it's not exclusively. I'm saying the state had a weak case. Collins is their star witness. I have new evidence that shows he wasn't in the store that night. He himself has recanted, you know, whatever it is. This completely undermines, further undermines his testimony at trial. Therefore, when you put it all together, that's an actual innocence case? I think that's right, Your Honor. I think the standard is if any reasonable juror, considering all of the evidence, old and new, meaning the trial evidence as well as the new evidence, would have reasonable doubt, right? It would have at least reasonable doubt. And I think that's the case here. And what's the best case that supports that? Is that what you think happened in Cleveland, essentially? I think so, yes, yes. I think this case is actually quite similar to Cleveland. I think in Cleveland the trial evidence was actually stronger. And so here I don't think that the new evidence would need to be quite as strong as in Cleveland, but I think it is quite similar to the kind of evidence you had in Cleveland. For example, the court placed heavy reliance on the Donovan affidavit, which came from a longtime acquaintance, I think 16 some odd years later. Okay. Okay. All right. Thank you. You'll have your rebuttal. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court, Assistant Attorney General Marissa Wiesen on behalf of Respondent Randy Rewards. I want to first talk about the totality of the evidence here weighed against the State's case. Mr. Hubbard hangs his hat on an assumption that the jury would necessarily take an all-or-nothing approach here. A reasonable juror would take an all-or-nothing approach and assume that all of the new witnesses are now telling the complete truth and that all of the strong circumstantial evidence already presented at trial carries no weight. And that is simply not the case here. After weighing all of this evidence, the new and the old, a reasonable juror would be prevented from concluding that Mr. Hubbard is innocent. There is nothing that Mr. Hubbard has now offered that usurps the power of the strong evidence presented at trial. And that placed Mr. Hubbard at the scene immediately before the shooting, after the shooting. I mean, the evidence is not, I don't know how strong the evidence was. I mean, it's not, you don't have a confession, you don't have physical evidence. You have an eye, not an eyewitness, but a witness who says that Hubbard was there with the victim and he saw him run away after he heard the shots. He IDs him. The motive is, seems kind of weak to me, honestly. I mean, I don't, yeah, maybe he has a grudge against him, but I'm not sure why he picked that night to shoot him. But I don't know. I mean, he, obviously Hubbard oddly is at the scene, lies to the police later. That works in there too. But I guess I'm just not sure it's that, I'm not saying it's not a case that he could have been convicted on, but I don't know that it's a really strong case. And doesn't that, isn't your friend on the other side right? That has to factor into what you look at in the actual innocence side, right? Yes, absolutely. It certainly weighs in. I would respectfully disagree that the evidence presented at trial was strong. It was circumstantial, but it was strong. So we have, as you mentioned, the three key false statements that Mr. Hubbard provided to police. And this demonstrates his guilty state of mind. So he said that he was never at the shooting. He was never at the scene after the shooting on the 17th. He lied and said that he had never, he hadn't seen Mr. Penn, the victim, since the 80s, when Mr. Penn's brother, Leon Penn, testified that they sold drugs together, they were placed together the day before, and they said they would see each other again on the 17th. Or, yes, the 17th, the day of the shooting. He also lied about the prior murder case, where Mr. Penn, the victim, was a witness against him. Those three statements demonstrate his guilty state of mind. What about the, as you're answering Judge Nalbany's question, what about the, would you work in your sort of response to the Hill affidavit? Because you've got, you know, an affidavit there by someone who says he saw this guy, Goings, actually commit the murder. So that would be the only other, quote, unquote, you know, eyewitness. Absolutely. So there is no record of Mark Goings as a suspect, and as, you know, Mr. Kazan mentioned, the only other evidence related to Mark Goings is two other parties, so Mr. Randall and Mr. Williams, I believe, who now say that that was word on the street. And as we've identified, that's hearsay evidence. While that can come into the consideration as to whether Mr. Hubbard has demonstrated factual innocence, we also have to think about what a reasonable juror would be instructed. And they would, you know, even if that evidence were to come in as hearsay evidence to support Hill's affidavit, we would be looking at a reasonably instructed juror that most likely it would not be considered for the truth of the matter asserted. So there's, they have no, they weren't placed, they didn't see him do it. Hill's the only one. And, of course, Mr. Hill's affidavit is inherently suspect. Not only was it offered 19 years after the shooting, but the signature on his affidavit only aligns with the time when he was incarcerated with Mr. Hubbard. And as we pointed out in our brief, this timing is inherently suspect, along with the 19-year delay. There's also no evidence in Mr. Hill's affidavit to support that he was actually at the scene of the crime. So none of the other witnesses, the 10 or 12 witnesses that did testify at trial, no one mentions Askiah Hill. His name doesn't appear in the record either. And I think that says a lot about whether or not his affidavit is reliable. And Judge Nobandy, and I just want to go back to the other evidence at trial that was strong. So there were others that placed Mr. Hubbard at the scene. Even if we discredit Mr. Collins' testimony, Andrew Smith testified that he saw Mr. Hubbard immediately before the shooting, outside the Special K party store, with two others. Right, but Collins said it was one other. It doesn't seem like Collins and Smith don't necessarily agree on how many people were there. Do they? I would not disagree that there are some inconsistencies amongst the witnesses. But that is just simply not enough to overcome the actual innocence standard, particularly when you look at it as a wholesale evidentiary package. There was some question later about whether Smith and Hubbard, I'm sorry, Smith and Collins had talked to each other, right? Collins said he talked to Smith, and then he said he called him, and then he said he didn't talk to him at all. I don't know whether that's a big deal or not, but it just seems like an odd, it just seems like there's some problematic things. I don't know what to do with it, but obviously the fact finder, the judge had it all. Certainly. There was, as far as I recall, there was evidence in the record during Mr. Collins' original statement to police that he gave under a false name. He gave under the name of Tony Smith. That I believe that he had called Mr. Smith, Andrew Smith, not himself as Tony Smith, called him and either told him about the shooting or something like that. But I don't believe that he actually testified to that at the preliminary examination or at trial when he did recant. So his third change in his story. I mean, I think whether or not that has some marginal value, because I don't think he testified to that at trial. But I will say that Mr. Collins giving his original statement to police under the false name of Tony Smith, I think it not only discredits the fact that he says he was afraid because he was on escape status and he didn't want to be put back in jail, because the police didn't know who he was when he gave that original statement. And I also think it shores up. Do you think the original statement is the most credible statement? Is that fair? Yes, Your Honor. I would say Mr. Collins' statement to police that he gave under the pretense of a false name, which not only, as I mentioned, shows that there was no threats of coercion, but it also shows he did testify at trial that people were calling his mother, they were threatening his family if he testified against Mr. Hubbard. And I think giving that statement under the name Tony Smith shows that it was true because he believed he had protection under that false name. Another point I want to make is regarding motive. This is not in the record, but it is public information from the Michigan Department of Corrections. So Mr. Hubbard spent time between the 1988 murder trial against a different individual and 1992 when the shooting occurred. He spent time incarcerated for CCW conviction. The site is not entirely clear as to what exactly his dates of discharge were, but he was at least on parole until November 1991. And so while it may seem somewhat tenuous to murder someone four years after they testified against you in a murder trial, I would strongly disagree with that because here he was incarcerated and he was on parole. And so I think he was waiting until the right time to finally eliminate the person that had testified against him in a prior murder trial. Did that come out at trial? That he was incarcerated? I don't believe so. I mean, was the motive, but there was evidence of the alleged motive, right? Yes, so the party stipulated as to Mr. Rodnell Penn's testimony at the prior trial, and they also stipulated that the case had been dismissed without prejudice because Mr. Penn and several other witnesses failed to appear and there was a bench warrant for Mr. Penn's arrest. I want to point to Mr. Collins, what we now have is his fourth change in his story. Opposing counsel has discussed that impeachment evidence simply isn't enough, or that's not enough to say that he's not factually innocent. But I think the conundrum we have here is if we believe that Mr. Collins can't believe that, then we can't believe Collins' fourth story, right? Because that is just impeaching his own third, and so I think he's impeaching himself. Let me ask you this. I think it's in Davis that we said if somebody's recanting or changing their story, I'm paraphrasing because I don't remember the language, we would look at corroborating evidence becomes important, something like that. Sure. What do we have here? I mean, I know we've discussed it a little bit, but is it the Smith testimony? What else is corroborating the Collins story? Is it Hubbard being on the scene that night too? Is that what it is? What else? Well, I think there's two key pieces of evidence that corroborate Mr. Collins' third day of trial testimony, right? So the first is that Andrew Smith also saw Mr. Hubbard with other individuals outside the Special K party store the night of the shooting, three to four minutes before he heard gunshots. So that's the first piece. The second piece of evidence is that Mr. Collins testified at trial on the third day that Mr. Penn's body was lying sideways-like, and that was not public information. All of the individuals who had arrived at the scene, the body had been bagged, there had been officers at the scene already. No one else has testified to that information. He testified to that in his original statement to police, I believe, and he was clear about that on his third day of trial. And I think that that type of non-public information, the way that the body was lying fully shores up his third day of trial testimony and shows that he was at the scene and he witnessed not only Mr. Hubbard at the party store with Mr. Penn but saw him running across the field and the dead body after that. I think it's important to note, too, when we look at the totality of the evidence here and we look at Mr. Collins' testimony, when the prosecutors from Wayne County sought to research Mr. Hubbard's third motion from relief in the trial courts, Mr. Collins refused to speak with the prosecutors. He instead referred them to his defense attorney, John Posner, but Mr. Posner passed away in 2017. So it's pretty clear that Mr. Collins hadn't spoken to his attorney in two years if he still believed him to be alive. But it also, I think, completely undercuts any reliability because I think it's very unlikely that he would testify at trial or at a new evidentiary hearing or a new trial. And, again, as you mentioned, I think it was just... I mean, there are all kinds of reasons why somebody might not want to testify or might not want to talk to the police. Maybe he would testify if he was subpoenaed or whatever, but... I mean, he's probably not looking to go out of his way to talk to the cops. I mean, I guess I don't know what to do with that. It's kind of a data point, but it seems like, yeah, okay, he didn't want to cooperate in the investigation, but it's not like the Detroit police or whatever have the best reputation, whatever, that kind of thing. I don't know. You know, I think you're right, Judge, but I also think that we have to take into consideration whether or not the witnesses who signed their affidavits, whether they be new or recanting, are willing to testify at trial. And I think that that goes to reliability. So, you know, I think, like you said, it's just another data point that, in the state's opinion and in Judge Lawson's opinion in the district court, found that his fourth change in his story is entirely unreliable. I also want to mention that any claims that, like I mentioned earlier, the fake name that he gave in his original statement to police, any allegations that he now makes that the police coerced him or that the prosecutors committed misconduct in obtaining his statement are baseless because this shows, when he gave the false name, that he was not being threatened by police because they didn't know who he was. And, in fact, the police let him go after he made his initial statement. He wasn't incarcerated after that. And the other time that Mr. Collin says that he was coerced into his statement is in between his first day of trial testimony and his third day. I see my time is up. If I might just briefly conclude. Yes, you may. Thank you. That Mr. Collins was the one who put himself in the difficult position. He committed perjury either at the preliminary examination or the first day of trial. And there was no coercion by the police. There was no prosecutorial misconduct. There's no evidence of that in the record. And I might just briefly conclude and ask that the state, Judge Batchelder, do you have any questions? I do not. Okay. Thank you. Thank you. We'll hear rebuttal. A couple of points on rebuttal, Your Honor. I think it's notable that the state still hasn't explained and doesn't really try to defend Collins' testimony that he spotted Mr. Hubbard from the back of his head 400 feet away. That still hasn't been explained. And then to the state's two pieces of key evidence. That was in front of the fact finder. I mean, he judges the witness, says he's credible. I mean, I'm not sure what. At that point, you're just questioning whether the judge made the correct decision, right? Well, Your Honor, I think it does. Of course, it goes to the strength of the evidence. As you pointed out, there really wasn't strong evidence at trial here, and that's part of the story. But, I mean, yeah, but I think if you credit, if you're the fact finder and you credit what Collins says and testifies to, it seems to me you could find him guilty beyond a reasonable doubt, given the other evidence. But, I mean, I guess to your point, if it's a credibility contest, then impeachment evidence, I suppose, is important. Certainly fair game. That's what this court made clear in Souter and Cleveland and the Supreme Court in-house. But I wanted to get to the state's two pieces of key evidence. One of them, it says, is the testimony of Andrew Smith. I think, as Your Honor pointed out, it's pretty equivocal. It says there's two individuals with Mr. Hubbard in the store that I think raises more questions than it answers. There's no testimony that anyone saw Smith in the store. In fact, Smith says he didn't see Collins in the store. And then to the state's second point, second piece of key evidence, it says that Collins testified that Mr. Hubbard was, or that the victim was lying on his side. But if you look at the trial transcript 5611 at 3263, Collins says, I seen him laying on his stomach. Then he's prompted, saying laying on his stomach, the attorney says. Then he says, on his sideways like. So I think that's very equivocal testimony. I don't think that it offers much in the way of corroboration at all. We don't know what Collins heard about what happened on Gray Street that night. So I don't think that that's nearly enough to rescue the state's case. And Your Honor, I see I'm almost out of time. So just to conclude, putting all the evidence together, the well corroborated recantation of the state's key witness, recantation of the state's key witness, the lack of any direct evidence tying Mr. Hubbard to the crime, the state's implausible theory of motive, and the evidence pointing to a different suspect with a far more plausible motive, as this court held in Cleveland, quote, it surely cannot be said that a juror conscientiously following the judge's instructions, requiring proof beyond a reasonable doubt, would vote to convict. This court should therefore reverse and remand to permit Mr. Hubbard to reach the merits of his constitutional claims. I take it there's no case law that really says if it's a bench trial, it's any different, the standard. I mean, the standard is stated in terms of jurors. I assume that just means fact finder. Yes, Your Honor, I think that's right. And I think it's because it's a prospective standard, rather than trying to ask what would this fact finder have done, it's what would a reasonable fact finder. Great. Thank you. And thank you. I know you were appointed under our CJA program, Mr. Kazam, so thank you very much for doing that. We appreciate it. And we appreciate the briefs and the arguments in this case. Thank you very much. My pleasure. Thank you very much. With that, I think we're adjourned.